**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| MICHAEL WALL, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>)<br>MICHAEL J. ASTRUE, Commissioner )<br>of the Social Security Administration, )<br>)<br>Defendant.[1] ) | 1:05-cv-1221-SEB-JMS |

**Entry Discussing Complaint for Judicial Review**

Michael Wall ("Wall") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **remanded** for further proceedings.

**I. BACKGROUND**

Wall applied for DIB on June 13, 2000. After a hearing was held on March 11, 2002, Administrative Law Judge ("ALJ") Norris issued an unfavorable decision on March 25, 2002. Review was granted by the Appeals Council. The Appeals Council vacated the ALJ's decision and remanded the case for a new hearing and to consider additional evidence tendered by Wall. Wall filed a new application on June 26, 2002, and a hearing was held before ALJ Armstrong on July 28, 2004. The Appeals Council ordered that the two claims be consolidated, and a supplemental hearing was held before ALJ Armstrong on October 14, 2004. At the July 2004 hearing, Wall was present, accompanied by his attorney. Medical and other records were introduced into evidence. Wall, his girlfriend, two medical experts, and a vocational expert testified. At the October 2004, hearing, Wall, his girlfriend, and a vocational expert testified. The ALJ denied Wall's application on October 22, 2004. On September 9, 2005, the Appeals Council denied Wall's request for review of the ALJ's decision, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d) of the *Federal Rules of Civil Procedure*, Michael J. Astrue, in his official capacity only, is the proper defendant in this action.

jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Wall had not engaged in substantial gainful activity since August 2, 1999, his alleged onset date, and he was insured for disability insurance benefits on that date and remained insured through June 30, 2003; (2) the medical evidence established that Wall had "severe" impairments consisting of fibromyalgia and degenerative changes in his cervical spine; (3) Wall did not have an impairment or combination of impairments listed in, or medically equal to one listed in, the Listing of Impairments; (4) Wall's subjective complaints and allegations of total disability were not reasonably consistent with the underlying objective medical and other evidence; (5) Wall could perform light work; (6) Wall's residual functional capacity ("RFC") prevented him from performing his past relevant work; and (7) Wall was a younger individual on his alleged onset date and at the time of the ALJ's decision he was "closely approaching advanced age," he had the equivalency of a high school education but he had no transferable work skills. With these findings in hand, and through the application of applicable rules and regulations, specifically Medical-Vocational Rules 202.15 and 202.29, the ALJ concluded that Wall was not disabled at step five of the sequential process.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for disability benefits, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

The ALJ found that Wall had "severe" impairments of fibromyalgia and degenerative changes in his cervical spine, but that he could perform the full range of light exertional jobs.[2] (R. at 29-30). Wall argues that the ALJ's decision is not supported by substantial evidence.

In a fibromyalgia case such as this, the Seventh Circuit has emphasized that the symptoms of fibromyalgia are "entirely subjective." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir.1996). "The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and-the only symptom that discriminates between it and other diseases of a rheumatic character-multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." *Id.* at 306.

Wall first contends that the ALJ failed to properly evaluate Wall's upper extremity impairments. The ALJ "contemplated" limiting Wall to sedentary work with various restrictions, including overhead work with his right arm and repetitive forceful gripping with his right hand, however, he ultimately determined that allowing such restrictions "required crediting his complaints far more than they deserve." (R. at 29A). Accordingly, the ALJ determined that Wall had no upper extremity limitations. The ALJ reasoned that Wall's degenerative changes in his cervical spine were likely to cause some "local, minor pain rather than the debilitating type that radiates into his right upper extremity and prevents him from raising it above his head or grasping things (*see* claimant's testimony)." (R. at 27). This did not, however, take into account the evidence of bilateral lateral epicondylitis, or the injections which were given in Wall's right elbow (R. at 78, 83-84, 122, 123, 128-131).

---

[2]"Light work" is characterized as lifting a maximum of twenty pounds, with frequent lifting or carrying of up to ten pounds, and standing or walking off and on, for a total of six hours during an eight-hour workday, intermittent sitting, and using hands and arms for grasping, holding and turning objects. *Clifford v. Apfel*, 227 F.3d 863, 869 n.2 (7th Cir. 2000) (citing 20 C.F.R. § 404.1567(b) and Social Security Ruling 83-10).

3

In November 2002, medical progress notes indicated a decrease in right hand grip strength and some reduction in right arm flex, right arm extension, and right arm abduction, with tenderness over the last six months. (R. at 615-616). A lateral epicondyle injection was performed. (R. at 615). Wall's reduced right hand grip strength was recorded in June 2003. (R. at 83-84). A painful nodule on Wall's left hand was noted on July 9, 2003, to have "increased in size over the last several months." (R. at 77-80). In February 2003, treating physician Dr. Carbonne opined that Walls could only occasionally reach overhead and extend arms out. (R. at 442). Medical expert Dr. Farber testified that Wall should not do any overhead work with the right hand. (R. at 686). The ALJ's failure to incorporate into his RFC assessment any difficulty in Wall's use of hands, arms and elbows is not supported by substantial evidence.[3]

Wall also argues that the ALJ failed to incorporate in his RFC assessment several documented impairments. The ALJ did not discuss Wall's Meniere's disease, although he noted that Wall had hearing loss in his left ear. (R. at 27). Medical expert Dr. Farber testified that Wall's dizziness caused by Meniere's disease would require him to be restricted to no work at unprotected heights or around hazardous machinery. (R. at 686). This is consistent with Wall's complaints about dizziness and statements that he had problems with his balance and often fell down. (R. at 484, 500, 666-67). In addition, the ALJ failed to discuss and incorporate Wall's daytime sleepiness (side effects of medications), fatigue and lack of stamina. (R. at 918, 1080). The ALJ did not articulate any reason for excluding these uncontroverted symptoms into his RFC determination.

With respect to the ALJ's credibility assessment, Wall contends that it is based on factual errors. The ALJ discredited Wall's credibility for several reasons. The ALJ found that Wall's statements that pain medication both gave him relief and did not give him relief detracted from his credibility. The ALJ's rationale for this, however, is not supported by the record. In support of the statement that medications do not give him relief, the ALJ cites to a page in the record in which Wall's wife had ordered a refill of Zoloft for Wall on March 13, 2001. Wall's *wife* apparently noted no benefit or side effects, and said that he is "on so many medicines, it's hard to tell." (R. at 515). The ALJ also relied on statements made by Wall on May 17, 2000, in which Wall reported that Elavil "helps somewhat" and the Flexeril "helps a little." (R. at 923). On October 30, 2000, Wall reported that he felt "fair relief" from the Flexeril taken for his fibromyalgia pain symptoms. (R. at 946). The remarks noted by the ALJ were made not only by different people, but at different times and concerning different medications. Such statements are not inconsistent nor do they warrant a negative reflection on Wall's credibility. The same error taints the ALJ's conclusion that Wall had alleged and denied side effects from medications. Again, the ALJ cites to different sources and different time periods. (R. at 504, 515, 523).

---

[3]To the extent the ALJ discredited Wall's complaints of his hands not working well because Wall could go fishing, this rationale is not supported by the record. Wall reported that he was instructed to go fishing by his psychiatrist and for a period of time in 2002, he did. (R. at 508, 703). Wall reached the point in 2003, however, when he only fished a couple of times that year and not at all in 2004. (R. at 731).

4

The ALJ also found Wall less credible because of his "history of illicit drug use" and "ongoing requests for highly addictive narcotic pain killers." The history of Wall's drug use, however, is highly remote in time. The record reflects that Wall last used illicit drugs in 1976. (R. at 414). He last drank alcohol in 1988 or 1989. (R. at 414, 231). The ALJ cites to no medical source who characterized Wall as having drug seeking behavior. In fact, Wall reduced and then stopped taking Morphine for pain in 2002 after a year because of the sedating side effects and lack of effectiveness. (R. at 159-60, 517, 616-18, 1057). Moreover, it is questionable whether Wall's antidepressant, anti-inflammatory, and muscle relaxer medications would be classified as "highly addictive narcotic pain killers."

The ALJ determined that the fact that Wall told a doctor that "doing anything" made his pain worse militated against crediting his claims because Wall "functions well enough to go fishing." (R. at 29). Fibromyalgia is evidenced by pain all over. Wall consistently complained of having pain all over. There is no evidence that Wall did not experience pain during the times he was able to go fishing. The ALJ's finding that Wall was not credible on this basis is not supported by substantial evidence. Although it is proper to consider a claimant's activities as one factor when determining credibility, reliance on a claimant's minimal daily activities does not form an adequate basis to discredit his allegations of disability. *See Carradine v. Barnhart,* 360 F.3d 751, 755 (7th Cir. 2004) (ALJ "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week"). Although the court grants special deference to the credibility determination made by the ALJ and generally will not overturn it unless it is "patently wrong," in this case the ALJ did not "build an accurate and logical bridge" from the evidence to his conclusions. *See Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir.2001). Therefore, the court cannot affirm the ALJ's analysis.

The Commissioner argues that even if the ALJ had incorporated restrictions such as right handed weakness, slight right handed paralysis, and only occasional use of the right hand for fine manipulation and forceful gripping, the vocational expert had testified that with those limitations Wall could perform 112 sedentary unskilled surveillance system monitor jobs in the State of Indiana. (R. at 697). The Commissioner's position is unsupported by any authority or argument, however, that the existence of 112 jobs in the State of Indiana amounts to a significant number. *See Lee v. Sullivan,* 988 F.2d 789, 794 (7th Cir. 1993) (finding that 1,400 jobs were a significant number, and noting that other circuits had found 174 to 1,350 jobs were a significant number). Accordingly, any contention of "harmless error" by the Commissioner is not well taken.

The ALJ does not point to any physician report which limits Wall's RFC to the light level. Rather, the ALJ notes that three treating physicians opined that Wall was unable to perform even sedentary work on a sustained basis. (R. at 29). The ALJ's rationale for rejecting the opinions of the treating physicians is sparse. *Id.* To this extent, the court cannot trace the path of the ALJ's reasoning. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (an ALJ must "sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning.") (internal quotation omitted).

5

## III.  CONCLUSION

For the reasons discussed in this Entry, the ALJ's conclusion at step five of the sequential analysis is not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:  07/31/2007

*(signature)*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana